BOWES, Judge,
dissenting.
At the onset, I must state that I abhor the nature of the crime of which the defendant stands convicted. However, no matter how repugnant the nature of a crime, each defendant has specific constitutional rights which must be properly protected.
Several aspects of this case deeply disturb me, which lead to my thorough review of this record. Although, unfortunately, some of those aspects are not properly before this panel for review, I feel they deserve mention.
First, the local district attorney “re-cused” himself and the staff of his office from prosecuting the case and requested a state assistant attorney general act as prosecutor, because of the relatively small size of the community, and the inflammatory nature of the crime, and yet no motion for a change of venue was filed by the defense. Under these circumstances, it would certainly appear that the defendant’s case would be prejudiced by a trial in this locale and that this motion would be obvious to the defense. Yet, no such motion was filed and no appellate review can be had of this matter.
The next aspect which disturbs me is the defense’s failure to challenge the propriety of trying Piazza before a six-person jury. Under LSA Const. (1974), art. 1, sec. 17, and LSA C.Cr.P. art. 782, six persons appear to be the proper number of jurors to *1325 hear defendant’s case. However, it has long been the law of Louisiana that the number of jurors needed to try a case shall be determined by the gravity or nature of the crime charged. See State v. Stanford, 204 La. 439, 15 So.2d 817 (La.1943) and its progeny. A basic method of determining the gravity of a crime is the penalty which may be imposed upon conviction of the crime. Recently, a number of cases have held that where charges are joined for trial, the right to a jury must be determined by the total maximum potential imprisonment which may be imposed. State v. Bissett, 451 So.2d 181 (La.App. 1st Cir.1984); State v. Boult, 440 So.2d 766 (La.App. 2nd Cir. 1983); State v. Laurendine, 439 So.2d 398 (La.1983); and State v. Comeaux, 408 So.2d 1099 (La.1981). In like manner, my feeling is that the same standard, i.e., the total maximum punishment which may be imposed, should determine the number of jurors required to try a case. In the present case, the defendant was exposed to a maximum sentence of twenty-five years at hard labor (if convicted on all five counts). The drafters of the Louisiana Constitution of 1974 probably never envisioned a situation where a defendant, subject to a sentence of 25 years at hard labor, would be tried before a six-person jury. Certainly, from the defense’s point of view, in obviously hostile territory, it would be far more difficult to obtain conviction by a 12-person jury, than a six-person jury, and defense counsel should have made a strenuous objection or effort in this direction, so that it could have received appellate review.
The third item which deserves consideration is the failure of the State to call several witnesses to testify. In particular, there was the young boy, J_, whom the defendant claimed he found with one of the victims, playing nude in the hot tub of a nearby model home; a sixth young girl who was named by some of the victims as herself being molested or at least being present during some of the incidents which led to this prosecution; and the thirteen-year old sister of one of the victims, with whom the defendant had spent considerable time. Since the State did not call these children, it can be only assumed that their testimony would not have aided the State’s case. Why, then, were they not called by the defense to bolster it’s ease? I can only speculate that lack of continuity of the defense (during the course of this prosecution, defendant was represented by four different attorneys) accounted for this, perhaps fatal, oversight and the other errors or omissions of the defense mentioned above.
This, then, brings me to the items properly before this court for review; of those items, two were assignments of error and the third is the sufficiency of the evidence presented against the defendant.
The only evidence presented against the defendant was the testimony of the five very young victims whose ages varied from 6 to 10.
Up until that point where each child started to testify concerning the corpus delicti, their testimony was, as one would expect of young children, somewhat confused, disjointed and hesitant. As the girls were questioned on direct examination concerning the substance of the accused acts, their testimony, and even the wording of their testimony, became so similar as to be suspect, while on cross-examination their testimony became much less damning and, to some extent, even exculpating. Considering the foregoing, I am not sure that the testimony produced showed the defendant guilty beyond a reasonable doubt.
Lastly, there are the two assignments of error designated by the defense as numbers 4 and 5:
4. The Trial Judge failed to follow the sentencing guidelines as established by the Code of Criminal Procedure Article 894.1.
5. The sentence imposed is in violation of Article 1, Section 20 of the Louisiana State Constitution [being an excessive sentence].
ASSIGNMENTS NO. 4 AND 5
It would appear that the trial judge did not comply with art. 894.1, C.Cr.P., when *1326 sentencing the defendant. Nowhere does he mention the article or make reference to any of its provisions. He merely made reference to some letters written on behalf of the defendant and the pre-sentence investigation report, which is included in the record. While jurisprudence has consistently held that failure to comply with the dictates of article 894.1 does not automatically render a sentence invalid (see State v. Davis, 448 So.2d 645 (La.1984); State v. Wimberly, 414 So.2d 666 (La.1982); State v. Smith, 452 So.2d 251 (La.App. 5th Cir. 1984); State v. Kennedy, 461 So.2d 455 (La.App. 5th Cir.1984), Writ Denied, it appears that in the instant case the trial judge gave undue consideration to the militating or aggravating factors and merely lip-service to the mitigating factors.
The record and the pre-sentence investigation report reveal that the defendant is a 55-year old first offender, with a fine work record, highly thought of among his peers, and formerly possessing a position of great respect in the community. Piazza accumulated an outstanding military record, attaining the rank of full colonel in the Reserve forces of our country. He holds a top-secret security clearance and, until this incident, was under consideration for promotion to brigadier general. In addition, appellant served as surgeon of the LaPlace V.F.W. post, is a member of the Masons, and held an investigator’s commission with the local district attorney’s office.
Certainly, it would appear that these attributes, together with the outstanding letters written to the trial judge on his behalf, deserve more consideration from the sentencing judge than to give him sentences representing eighty per cent of the maximum imprisonment possible, to be served consecutively. At the defendant’s age of 55, this probably amounts to a life sentence.
In my opinion, the record appears to indicate that Piazza is a prime candidate for probation, at least for a good portion of his sentence. His refusal to admit his guilt and to show contrition for his alleged offenses were cited by the Probation Agent in her report as prime reasons for her refusal to recommend probation. However, if he truly is innocent, as he strongly professes, then his refusal to admit guilt is another strong plus for his character and for probation, or partial probation; for it is obvious that by reversing his stand, he could have very probably obtained a lighter sentence. His work record and his ability to deal with discipline, evidenced by his rise from private to colonel in the armed forces over many consistent years, indicate that he could cope with the restrictions of probation.
In view of all of the above, and in light of the actions of the district attorney in recus-ing his entire office staff from prosecuting because of the inflamed community, one cannot help but wonder if the local trial judge was consciously or unconsciously influenced by the same inflamed community and thus felt compelled to mete out a very harsh sentence regardless of the above. In my view, these sentences are excessive and severe, especially because they are to be served consecutively, and I would reduce them considerably and order a substantial portion to be served on probation.